THE BLOSSBURG AND CORNING RAILROAD COMPANY, Respondents, *v.* THE TIOGA RAILROAD COMPANY, Appellants.

This case presents merely a question of the construction of the language constituting a clause of the contract.

A patent ambiguity in a written contract cannot be explained by parol evidence.

HOGEBOOM, J.   The only serious question in this case arises upon the construction to be given to the agreement made between the parties on the 29th day of July 1851. As the ambiguity, if any, is patent upon the face of the instrument, parol evidence to explain its meaning was properly excluded. By this agreement, the road was to be operated for the mutual benefit of the parties. The plaintiffs were to furnish the road, free of charge to the defendants, together with all necessary depots, machine shops, engine houses, and grounds. The defendants were to furnish the necessary rolling stock and motive power, and to operate the road between Corning and Blossburg, for the purpose of transporting passengers, mails and freights for all the regular business that should be furnished to the railroad. Uniform rates of tolls and charges for transportation of passengers, mails and freights on said road, were to be established annually by the mutual agreement of the parties, and in case of their disagreement, by disinterested persons to be chosen by them. The defendants were to pay the plaintiffs two-thirds of the receipts for passengers, mails and freights—"the expenses charged customers for the loading and unloading coal, lumber and other freights, and for warehousing *and such additional charges by way of discrimination as should be made for short distances for motive power, not to be included in the term receipts as above mentioned.*" The question arises on this latter clause "additional charges by way of discrimination for short distances for motive power."

Under this contract, the parties agreed upon a tariff of rates, both for freight and passengers under the provision in

the contract which called for the establishment of " uniform
rates of tolls and charges for transportation of passengers,
mails and freights." These rates were in one sense—proba-
bly in the sense intended by the contract—*uniform*, that is,
not fluctuating during the period for which they were estab-
lished, but they were not graduated at the same uniform
rate per mile for long and short distances. On the contrary
they differed materially according to the distance traversed,
being greater for the short distances, and less for the long
distances. The whole length of the road was forty-one miles.
Between the termini at Blossburg and Corning, there were
nine intervening passenger, and twelve intervening freight
stations, at various distances from five to thirty-six miles
from the termini of the road. There were no established
or agreed charges for loading and unloading coal, lum-
ber and other freights, or for warehousing; and none addi-
tional by way of discrimination for short distances for motive
power, unless they were included in, and were in fact the
identical discriminating rates contained in the tariff of uni-
form rates before mentioned, established by the mutual agree-
ment of the parties. This latter construction is the one
claimed by the defendants, who contend that they are enti-
tled to the *entire* excess of receipts for passengers, mails and
freights to and from all the intervening stations, beyond what
those receipts would have been if charged at the same rate
per mile, as is by that tariff of rates charged per mile for the
entire distance between Blossburg and Corning; whereas,
the plaintiffs contend that the parties were to participate in
the proportions provided by the contract in *all* the receipts
for whatever distances resulting from the uniform rates agreed
on by the parties, and that the additional charges by way of
discrimination for short distances for motive power spoken of
in the contract, refer only to additional charges beyond those
contained in the tariff of uniform rates. The referee of the
Supreme Court adopted this latter construction of the con-
tract, and if it be the correct one the judgment should be
*affirmed*, if it be not, then the judgment should be *reversed*
and a new trial granted with costs to abide the event.

1. The tariff of rates before mentioned, seems to be "uniform rates of tolls and charges for transportation of passengers, mails and freights," mentioned in the contract. Such is the practical construction given to it by the parties.

They *agreed* upon it as such and adopted it for one year, according to the requirements of the contract. Counsel for both parties so assume the fact to be on this argument.

Such is the fair interpretation of the contract. Uniform rates, in the sense here used, mean, I think, rates, which, for the time they are established, shall be kept at the same point, and shall not be variable or fluctuating. We may perhaps, take judicial notice of a fact so notorious as that railroad rates differ almost universally in the rate per mile between short and long distances, unless prevented by legislative restrictions. We may therefore conclude that when the parties contracted for uniformity of rates, they did not intend to lose sight of this well-established usage among corporations of this description.

2. I think the plaintiffs were intended to participate in all the uniform rates of tolls and charges, at the prices established in the tariff of rates.

These were the receipts for passengers, mails and freights, of which the contract declares they shall be entitled to two-thirds.

These uniform rates were established by the *mutual agreement* of the parties, because they were *mutually* to share in the receipts arising therefrom. Their mutual interest required that they should each have a voice in fixing these rates and graduating them at the proper standard. No unjust discrimination was to be made in favor of short distances in the established rates, to the general prejudice of the railroad, without the consent of both parties. As one furnished the motive power, and the other the track and fixtures, it was foreseen that they might possibly differ in graduating the tariff of rates, and provision was made for adjusting such differences of opinion.

3. The *additional* charges spoken of in that clause of the contract now in question, are *exclusive* of those contained in the table of uniform rates.

This is a reasonable inference, from the fact that they are spoken of in connection with other charges thus obviously excluded.   The charges for loading and unloading, and for warehousing, are confessedly not included.   Why then should *these* charges spoken of in the same connection, be deemed to be included.

The charges for loading and unloading and warehousing, are left to the discretion of the defendants.   It is fair to presume that *these* were designed to be of the same character, and to be disposed of in like manner.

The charges here spoken of, are *additional* charges, and it is reasonable to conclude that they were *additional* to those theretofore authorized.  .The language of the agreement is not that *all* discriminative charges shall be excluded from the ·receipts which are to be subject to division, but such *additional* discriminative charges as shall be made for short distances, for motive power.   The uniform rates had made, or were expected to make, discriminative charges.   These charges were not exclusively for *motive power*.   They were made upon general considerations as to the prices which the patrons of the road would submit to for the privileges enjoyed and the services rendered, and they were placed, doubtless, at as high a rate as was deemed to be consistent with the success of the enterprise.   They were not governed simply and precisely by the amount of expenses incurred or services rendered, but by the laws of trade, and of demand and supply.   At some points there might be danger of diversion of trade or travel to rival roads, and this would dictate a reduction of prices.   At other points where no such danger existed and property required a market, an increase of prices might be sound policy.

It is possible that the rates for the entire length of the road might be put below a strictly compensatory standard on a consideration of the fact that intervening stations would bear a higher tariff, we are not to conclude that the price for the longest distance was necessarily the standard and remunerative price which was to graduate and control all the others.   As in all the other cases, a great variety of considerations

62

entered into this question of prices. When, therefore, the contract speaks of additional charges by way of discrimination for short distances for motive power, I think it means strictly what it says. 1. That the charges referred to are *additional* charges, additional to those contained in the tariff of uniform rates. 2. Additional, *discriminative* charges beyond the discriminative charges contained in the table of uniform rates. 3. Additional, discriminative charges *for short distances*, not for long distances, not for distances nearly the whole length of the road. 4. Additional, discriminative charges for short distances, *for motive power*, not for other purposes, not founded upon general considerations as to the *policy of* favoring the transportation of a particular class of freight, or preventing a diversion of custom to competing railroads. Hence, also, I am of opinion that by the terms of the contract, these additional charges might be lawfully imposed by the defendants for the purposes specified, beyond the charges fixed in the uniform tariff of rates adopted by the parties. It is supposed this could never have been intended, as it would leave the interests of the road at the mercy of the defendants. But to this it may be answered : 1st. That the same argument might be applied to the charges for loading and unloading and warehousing, which might be put at extravagant and extortionate rates. 2d. That the defendants, equally with the plaintiffs, were interested in the pecuniary success of the road, and in the same direction, and that ordinarily this would operate as a sufficient check upon excessive charges. It may well be conceived that contingencies might arise where for short distances, and short distances alone, an excess of motive power beyond the ordinary wants of the road, might be required, and I have no doubt that the charges for this extraordinary service rendered by the defendants alone and to be paid to them alone, were deemed safe to be confided to the integrity and judgment of a partner in the general enterprise whose interests would suffer in common with those of the plaintiffs by a rate of charges which would amount to a prohibitory tariff. This conclusion is somewhat strengthened, I think, by the language of the contract

which requires the defendants to furnish " the necessary motive power, engines, machinery and cars for all the *regular* business that shall be furnished to said railroad," fairly implying that an extraordinary supply of motive power might be compensated by discriminative charges adapted to the emergency.

In short, the *discrimination* referred to was not a discrimination between the prices thus charged and the *lowest rates* charged in the agreed table of uniform rates, for no rate *per mile* for any distance was ever agreed upon, and there was, therefore, no means of determining what particular gross rate should be selected from which to discriminate, but a discrimination between the prices thus charged and the prices charged for the same distance in the table of uniform rates in consideration of the surplus motive power thereby required.

When, therefore, the contract declared that the defendants should pay to the plaintiffs two-thirds of the receipts for passengers, mails and freights, as the generality of the expression might, perhaps, be deemed to include the entire receipts from all sources whatever, it was apparently thought best, by way of precaution, to declare that in this term were not to be included charges for loading, unloading, warehousing, and extraordinary supplies of motive power for short distances.

This, I think, is the fair and reasonable interpretation of the contract and the most consistent with the probable intention of the parties thereto.

I am for affirming the judgment of the court below.

Affirmed.