WILLIAM T. EATON, A. D. WHEELER and Others, Appellants, v. WALTER A. WILCOX and Others, Respondents.

<div style="float:right; border:1px solid">42h 61<br>54ad604</div>

*Lease of lands to be used for the purpose of boring for oil or gas — construction of covenants contained in it — when a covenant will be held void for uncertainty.*

On May 19, 1881, the defendant Foster leased to the plaintiffs fifteen acres of land, with "the right to take, bore and mine for and gather all oil or gases found in and upon the premises, to have and to hold the same for the term of twelve years from this date, or as long as oil is found in paying quantities," the plaintiffs agreeing to give Foster one-eighth part of the oil produced and saved from the premises. By the lease the party of the second part (the plaintiffs) covenanted " to commence operations for said mining purposes, and prosecute the same on some portion of the above-described premises within two years from this date, or thereafter pay to the party of the first part (Foster) dollars per until work is commenced. This lease shall be null and void, and at an end unless said second party shall, within six months from this date, commence and prosecute, with due diligence, unavoidable accidents excepted, the sinking and boring of one well on or in the vicinity of this lease, to a depth of twelve hundred feet, unless oil in paying quantities is sooner found. * * * If the party of the second part fails to keep and perform the covenants and agreements by him to be kept and performed, then this lease shall be null and void, and surrendered to the party of the first part."

Within six months from the date of the lease the plaintiffs drilled a well of the required depth, natural gas being found at the depth of 1,045 feet in large quantities, and some oil, but not in paying quantities, at 1,093 feet. The plaintiff used the gas for fuel in drilling the well, but not in any other manner. In the fall of 1882 the plaintiffs removed their engines, etc., leaving the casing in the well. and ceased to carry on mining operations.

In February, 1884, Foster leased the premises to the defendant, Charles P. Thurston, who subsequently assigned such lease to the defendant, The Allegany Gas Company (Limited), for the same purposes, pursuant to which they entered into possession of the same and collected and sold the gas.

In this action, brought by the plaintiffs to restrain the defendants from interfering with, or appropriating to their own use, the gas well and the gas therein, the

referee held that the suspension of work upon the premises and the neglect of the plaintiffs to prosecute the same from the spring of 1882, to the time of their demand, gave Foster the right to declare the plaintiffs' rights under the lease forfeited, and that the complaint should have been dismissed.

*Held*, that he erred in so doing.

That there was no covenant in the lease which required the plaintiffs to continue the boring of oil wells upon the premises until oil was obtained in paying quantities, under a penalty of forfeiting their rights by a faiure so to do.

That the covenant requiring them to commence and prosecute operations for mining purposes within two years from the date of the lease, or thereafter pay to the party of the first part        dollars per        until work is commenced, was void for uncertainty, by reason of the blanks which were left in the vital and essential parts thereof.

That the decision could not be sustained because the referee was of the impression that the lease was hard and unconscionable and that equity would not enforce the performance of it for the reason that it contained no provision for giving the lessor any part of the gas found upon the premises.

That if a clause, providing that the lessor should have one-eighth part of the gas, had been omitted by mistake, the contract might still be reformed so as to express the intention of the parties; that if it now expressed their intention the parties must abide by it.

The defendants claimed that the lease had expired by its own terms, as the provision that the lessees should "have and hold the same for the term of twelve years from this date, or as long as oil is found in paying quantities," limited the term to that period, during which oil was found in paying quantities.

*Held*, that this claim was not well founded; that the term fixed was for twelve years, and as much longer as oil was found in paying quantities.

APPEAL from a judgment in favor of the defendants, entered in Allegany county upon the report of a referee.

*Hamilton Ward* and *Rufus Scott*, for the appellants.

*Cary & Rumsey*, for the respondents.

HAIGHT, J. :

This action was brought to restrain the defendants from interfering with, and appropriating to their own use, a gas well and the gas therein, belonging to the plaintiffs. The referee has found, as facts, that on the 19th day of May, 1881, the defendant Harvey C. Foster leased to the plaintiffs fifteen acres of land situated in the town of Wirt, Allegany county, "the right to take, bore and mine for, and gather all oil or gases found in and upon the premises, to have and to hold the same for the term of twelve years from this

date, or as long as oil is found in paying quantities." In considera-
tion whereof the plaintiffs agreed to give Foster one-eighth part of
the oil produced and saved from the premises. The lease con-
tained the following covenants: "The party of the second part
covenants to commence operations for said mining purposes, and
prosecute the same on some portion of the above-described
premises, within two years from this date, or thereafter pay to the
party of the first part      dollars per      until work is com-
menced. This lease shall be null and void and at an end unless
said second party shall, within six months from this date, commence
and prosecute, with due diligence, unavoidable accidents excepted,
the sinking and boring of one well on or in the vicinity of this
lease, to a depth of twelve hundred feet, unless oil in paying
quantities is sooner found. * * * If the party of the second
part fails to keep and perform the covenants and agreements by
him to be kept and performed, then this lease shall be null and
void and surrendered to the party of the first part." That the
defendant Harvey C. Foster was the owner in fee of the premises;
that the lessees did, within six months from the date of the lease,
commence and prosecute, with due diligence, unavoidable accidents
excepted, the sinking and boring of one well on the lease to a
depth of over 1,200 feet; that for that purpose they entered upon
the premises, erected thereon a derrick and engine-house, and with
their engine, boiler, tools and machinery placed therein by them,
commenced drilling the forepart of the month of June, 1881, and
first drilled to the depth of 1,093 feet, and after shutting down for
about two weeks during the month of July, started up again and
drilled to the depth of 1,500 feet, which depth was reached about
the middle of the month of August, 1881; that drilling was then
suspended and afterwards resumed, and in the winter and early
spring of 1882, the well was put down 300 feet deeper, making
the total depth of the well 1,800 feet, at an expense to the plaintiffs
of about $3,000; that at the depth of 1,045 feet natural gas was
found in large quantities, and at 1,093 feet some oil was found,
not, however, in paying quantities; that the well was cased down
to the rock, a depth of 285 feet, but was never tubed for the pur-
pose of obtaining oil; that the plaintiffs used the gas for fuel in
drilling the last 300 feet, but did not utilize the gas in any other

manner, the same being thereafter allowed to burn and go to waste; that the plaintiffs did not, after the spring of 1882, further prosecute operations for mining purposes on the premises or thereafter attempt to obtain oil on the premises; that in the fall of 1882 the plaintiffs removed their engines, boiler and machinery from the premises, leaving thereon their derrick and engine-house, the casing in the well and 150 feet of tubing which conducted the gas away from the well; that in the fall of 1883, two or three joints of tubing, of the length of about nineteen feet each, were taken to the well by the direction of one of the plaintiffs, but nothing was done with them there.

The referee further found, as facts, that on or about the 8th day of February, 1884, the defendant Foster, by an instrument in writing, let unto the defendant Charles P. Thurstone the premises described in the complaint, for the sole purpose of mining, drilling and excavating for petroleum, rock or carbon oil, or gas, or other valuable minerals, containing the following provision: "It is further agreed that this instrument is subject to a lease of a part of said land made to Wilcox, Wheeler & Eaton, in case the same has not now or does not become forfeited or canceled, and if the well on said lease is used by the said party of the second part, he is to pay the party of the first part rent for the same as if he had drilled it originally." This lease was subsequently assigned to the defendant, the Allegany Gas Company (Limited), who subsequently entered into possession of the premises, took possession of this well and have ever since appropriated the gas therefrom, conducting it in pipes to the works of the company; that the well and gas have been and are of great value; that after the Allegany Gas Company entered into possession of the premises, the plaintiffs, on the 14th day of February, 1884, demanded of the company the right to enter the premises for the purpose of receiving their share of the gas taken from the well; that they were excluded from the well and from any share in the gas by the defendant, the Allegany Gas Company (Limited).

The referee further found, as conclusions of law, that the suspension of work upon the premises by the plaintiffs, and their neglect to prosecute the same from the spring of 1882 to the time of their demand, gave to the defendant Harvey C. Foster and his

assigns the right to declare the plaintiffs' rights under the lease forfeited ; that the demise by Foster to Thurstone, and the possession so taken under his lease, operated as an election by Foster and his assigns to declare the plaintiffs' lease forfeited for such failure, and the defendants were entitled to have the complaint dismissed, with costs.

The question thus presented depends upon the construction which should be given to the covenants contained in the plaintiffs' lease. Have the plaintiffs failed to keep and perform the covenants and agreements by them to be kept and performed so as to have forfeited the lease ? The referee has, as we have seen, found, as a fact, that the covenant to commence and prosecute, with due diligence, unavoidable accidents excepted, the sinking and boring of one well on or in the vicinity of this lease to a depth of 1,200 feet, unless oil in paying quantities is sooner found, within six months from the date of the lease, has been fully performed by the plaintiffs. But he takes the position in his opinion that the instrument, as a whole, is simply an oil lease, and that the phrase " prosecute the same," appearing in the first covenant quoted, required the plaintiffs to continue the boring of oil wells upon the premises until oil was obtained in paying quantities, and that by failing to do this they forfeited their rights under the lease. The difficulty with the learned referee's conclusion is, that the lease is for " all oil or gases found," and that no such covenant appears in the lease. Had the lease contained such a covenant we should not hesitate to agree with him that there was a forfeiture. The covenant is not that they shall commence operations within two years and prosecute the same with diligence until oil in paying quantities is found or forfeit their rights under the lease, but it is that they shall commence operations and prosecute the same within two years from the date of the lease, or thereafter pay to the party of the first part        dollars per        until work is commenced (quite a different covenant), and the referee has failed to point out any particular in which this covenant has been violated. But, again, it will be observed that in this covenant blanks appear, constituting a patent ambiguity which cannot even be supplied by parol evidence. The blanks appear in the vital and essential part of the covenant. They affect the entire covenant, and it consequently is void for uncer-

tainty. (2 Pars. on Cont., 557–563; *The Blossburg and Corning Railroad Co.* v. *The Tioga Railroad Co.*, 1 Keyes, 486; *Vandevoort* v. *Dewey* (42 Hun, 68.)

The cases relied upon by the respondents are clearly distinguishable.

In the case of *The Allegany Oil Company* (*Limited*) v. *The Bradford Oil Company* (21 Hun, 26), the lease provided that unless the lessee should commence to bore the well within the period of nine months from the date thereof, that then the lease was to become void and cease to be of any binding effect. The lessee did not commence operations at all within the period agreed upon. The lease was, therefore, forfeited by its express provisions.

In the case of *Brown* v. *Vandergrift* (80 Pa. State, 142), the lease provided that the lessee should commence operations in sixty days and continue with due diligence, and if he should cease operations twenty days at any one time, the lessor might resume possession; and that in case the lessee did not commence operations within the time specified he should pay thirty dollars per month until he should commence. He did not commence operations within the time, and paid four months rent, but omitted to pay for the next eleven months. After the premises had been again leased, and the lessee thereunder had entered into the possession thereof, the first lessee tendered the eleven months rent past due. It was held that the lease was forfeited.

In the case of *Munroe* v. *Armstrong* (96 Pa. State, 307), the lease was made exclusively for the purpose of producing oil. It provided that the work of boring for oil was to be commenced in ten days and continue with due diligence until success or abandonment, and if the lessee failed to get oil in paying quantities, or ceased work for thirty days at any time, the lease was to be forfeited and be void. It was held that a cessation of work for thirty days forfeited the lease in accordance with its express provisions.

The particulars in which the contracts in these cases differ from the one under consideration will readily be observed, for it contained no such forfeiture clause as appears in those cases. The referee also appeared to be of the impression that this lease was hard and unconscionable, and that equity would not enforce the performance of it, for the reason that it contained no provision for giving the lessor any part of the gas found upon the premises; that

the plaintiffs might proceed and cover the premises with gas wells, and the lessor could obtain no benefit therefrom. The courts, however, are not called upon to make contracts for parties. If it was the understanding of the parties that the lessor should have one-eighth of the gas, as well as of the oil found, and that clause was omitted from the contract through mistake, it may still be reformed so as to express the intention of the parties. If, however, it was the intention of the parties that the lessor should have one-eighth of the oil only, and that the lessee should have all of the gas found, in consideration for their testing the territory for oil, then we see no reason why the parties should not abide by the contract as made. True, the lessor would derive no income from the gas that was found on the premises, but he would have no right to deprive the plaintiffs of their right to the same.

If the theory of the referee is correct, it would be the duty of the plaintiffs to continue to bore wells upon these premises, until oil was found in paying quantities, and then if not found in paying quantities, and they ceased to bore further wells, even though a well had been bored upon each acre of the land, still they would forfeit their rights under the lease, even though every well was a valuable gas well. The plaintiffs, as the referee has found, have already expended $3,000 in boring the first well. It is quite possible that this sum is largely in excess of the value of the entire fifteen acres, for farming purposes. It is quite as hard and unconscionable to now deprive them of the right to use this valuable gas, found by them, and thus lose the money expended in the operation, as it would be to require the lessor to live up to the contract made by him.

Again, suppose oil had been discovered, but not in paying quantities? Wells that would produce five or six barrels of oil per day, but not in sufficient quantities to pay the expenses of putting down the wells and gathering the same, could it be held that the plaintiffs forfeited their rights under the lease, because it was not found in paying quantities? It appears to us that the contract should not be so construed. The plaintiffs, having performed the covenants on their part, would have the right to retain possession, for the purpose of gathering the oil which they had discovered, to reimburse themselves as far as possible.

The respondents contend that the lease has expired by its own terms; that the provision providing that "the lessees to have and to hold the same for the term of twelve years, from this date, or as long as oil is found in paying quantities," fixed the term only for that period during which oil was found in paying quantities. If so, it must have expired before the plaintiffs commenced operations, for no oil was found in paying quantities after the date of the lease and before the well was bored. Such could not have been the meaning or intention of the parties. The term was for twelve years, or as long as oil is found in paying quantities, meaning twelve years and as much longer as oil is found in paying quantities.

The judgment should be reversed and a new trial ordered before another referee, with costs to abide the event.

SMITH, P. J., BARKER and BRADLEY, JJ., concurred.

Judgment reversed, and a new trial ordered before another referee, costs to abide event.